IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES PIERCE FARRIS, JR. | Case No. 5:20-cr-00173-JDW |

**MEMORANDUM**

Not everyone can afford a lawyer. And the Criminal Justice Act remedies that situation—and ensures the promise of the Sixth Amendment—by providing the necessary funds so that attorneys can represent criminal defendants who otherwise can't afford one. But "CJA funds are a necessarily limited resource,"[1] and what the CJA "gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel."[2] Where it becomes clear that a criminal defendant is able to pay for his legal representation, the defendant—not taxpayers—must bear that expense. That's the case here, and Charles Farris, Jr. must reimburse the Federal Community Defender Office for the Eastern District of Pennsylvania for that office's representation of him.

---

[1]   *United States v. Parker*, 439 F.3d 81, 109 (2d Cir. 2006).
[2]   *United States v. Wilson*, 597 F.3d 353, 357 (6th Cir. 2010).

I.  **RELEVANT BACKGROUND**

On April 13, 2022, by way of a Fourth Superseding Indictment, the U.S. Attorney's Office for the Eastern District of Pennsylvania charged Mr. Farris with five counts of wire fraud; one count of bank fraud; one count of false statement on loan application; two counts of tax evasion; one count of subscribing to a false income tax return; and aiding and abetting. On February 24, 2023, Magistrate Judge Carol Sandra Moore Wells arraigned Mr. Farris and set bail in the amount of $100,000. During his bail investigation, Mr. Farris "reported that he had $1.5 million in stock in CEC Steel and $2,600.00 in a savings account. He also reported that the company paid for his rent, car, and car insurance." (PSR at 21 n.7.[3]) Following an oral colloquy with Mr. Farris, Judge Wells determined that he was eligible for court-appointed counsel under the CJA and appointed the Federal Community Defender Office for the Eastern District of Pennsylvania to represent him.

On February 27, 2024, Mr. Farris and the United States entered into a plea agreement by which Mr. Farris pled guilty to wire fraud, false statement on a loan application, subscribing to a false income tax return, and aiding and abetting. As part of the plea, Mr. Farris admitted to defrauding a Pennsylvania-based steel company Metropolitan Steel Industries, Inc. ("MSI/Steelco") and failing to pay approximately

---

[3] All citations to "PSR" refer to the U.S. Probation Officer's Presentence Investigation Report dated December 12, 2024, and revised on March 5, 2025.

$331,952 in taxes on income that he earned from MSI/Steelco and other companies. He also agreed to forfeit the proceeds of the fraud and to pay restitution to the IRS.

The U.S. Probation Office began preparing a presentence investigation report ("PSR"). During that time, Mr. Farris "provided incomplete financial information to the U.S. Probation Office." (PSR at ¶ 89.) For example, he "failed to provide any documentation" and claimed only a single asset—the membership units in his company, CEC Steel, LLC.[4] (*Id.*) Mr. Farris reported that he is the "100% owner" of CEC Steel, which provides structural steel for construction projects and has 112 employees. (*Id.* at ¶ 85.) He also reported that CEC Steel pays for his housing and car-related expenses. After conducting a public records search, the Probation Officer learned that CEC Steel has "annual revenue of $1 million" and that Mr. Farris is the company's only executive officer. (*Id.*) Mr. Farris did not provide any information to Probation about the value of CEC Steel. Instead, he advised Probation that one or more companies owes $764,000 to CEC Steel, and CEC's value would increase if that debt is paid. Though Mr. Farris did not list any personal or business liabilities, the Probation Officer found two civil judgments from 2023 against Mr. Farris and CEC Steel in the amounts of $58,616 and $41,904. The Probation Officer also learned that "multiple companies filed UCC Filings against [Mr. Farris] and CEC Steel LLC" in 2022 and 2023. (*Id.* at ¶ 88.)

---

[4]     CEC Steel is also known as CEC Training, LLC.

Mr. Farris provided an incomplete picture of his personal finances as well. He filled-out net worth and monthly cash flow statements on May 6, 2024, but he "did not provide any corroborative records or tax returns" or disclose any bank accounts at that time. (PSR at ¶ 87.) "Regarding his monthly cash flow, he reportedly receives $3,009.00 in social security benefits and $4,031.00 in monthly allowances from CEC per month; his only outflow is $800.00 per month in groceries, resulting in a positive monthly cash flow of $6,240.00." (*Id.*) Given this net monthly income, I questioned whether Mr. Farris is eligible for representation under the CJA. Thus, on the morning of the sentencing hearing, my Chambers advised Counsel for Mr. Farris and the Government that I intended to raise the question of whether Mr. Farris should reimburse the costs of his legal representation pursuant to 18 U.S.C. § 3006A(f).

At the sentencing hearing on March 14, 2025, Mr. Farris raised concerns about certain paragraphs in the PSR,[5] so I gave him time to discuss those concerns with Counsel. Following that discussion, Mr. Farris confirmed that he had no objections to the PSR and that it did not contain any incorrect information. Given the PSR's conclusion that Mr. Farris has a net monthly income of $6,240, I questioned whether he is unable to pay for legal representation in this matter and ordered him to "file a brief addressing whether I should require him pursuant to 18 U.S.C. § 3006A(c) to repay the Federal Community Defenders Office in whole or in part for the time that it has represented him

---

[5] None of the paragraphs at issue dealt with Mr. Farris's finances.

in this case." (ECF No. 66.) In the meantime, I sentenced Mr. Farris to thirty months of imprisonment and three years of supervised release; imposed a $10,000 fine; and ordered him to pay restitution in the amount of $354,402,42.

Since then, Mr. Farris has filed a supplemental brief, arguing that I should not require him to reimburse the costs of his legal representation in this matter. He also submitted additional financial documentation to Probation, "including his 2021 and 2022 tax returns and information about his business assets and liabilities in 2023." (ECF No. 69 at ¶ 8.) In addition, on May 8, 2025, Mr. Farris filed a motion asking me to delay his report day due to medical issues. In the motion, he recites a litany of medical tests that he has received or will receive in the near future, but he makes no reference to how he is paying for that care. The Government has not taken a position on repayment, and the issue is ripe for disposition.

## II.   LEGAL STANDARD

Pursuant to the CJA, if a court finds that a defendant with court-appointed counsel "is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment …, as the interests of justice may dictate." 18 U.S.C. § 3006A(c). When a court finds that "funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the … community defender organization which provided the appointed attorney … or to the court for deposit in the Treasury as a reimbursement to

the appropriation, current at the time of payment, to carry out" the CJA's provisions. 18 U.S.C. § 3006A(f). "A defendant bears the burden to prove he is unable to pay for the cost of representation." *United States v. Konrad*, 730 F.3d 343, 346 (3d Cir. 2013).

## III. ANALYSIS

### A. Ability To Pay

A defendant is financially unable to obtain counsel if his "'net financial resources and income are insufficient to obtain qualified counsel' considering 'the cost of ... the necessities of life.'" *Konrad*, 730 F.3d at 347 (quoting Guide to Judiciary Policy, Guidelines for Administering the CJA and Related Statutes (the "CJA Guidelines"), Vol. 7, Part A, § 210.40.30(a).[6]) To determine "whether the person then has funds available to pay for some or all of the costs of representation[,]" the court should "consider pertinent information contained in the presentence report, the court's intention with respect to fines and restitution, and all other available data bearing on the person's financial condition, in order to make a final determination concerning whether the person then has funds available to pay for some or all of the costs of representation." *Id.* (quoting CJA Guidelines, Vol. 7, Part A, § 210.40.30(d).) "The test for determining a defendant's ability to pay 'is whether repayment would cause such financial hardship as to make it impractical or unjust.'" *Id.* (quotation omitted). Mr. Farris has not met his burden to demonstrate that he

---

[6]    The CJA Guidelines are available at https://www.uscourts.gov/administration-policies/judiciary-policies/criminal-justice-act-cja-guidelines.

would suffer a hardship if I order him to reimburse the costs of his representation in this matter.

There is no doubt that Mr. Farris "provided incomplete financial information to the U.S. Probation Office" in advance of his sentencing. (PSR at ¶ 89.) With respect to his business finances, he failed to provide any information about the value of CEC Steel, despite: (1) reporting that he is the 100% owner of CEC Steel; (2) being listed as the company's lone executive officer; (3) reporting that he had $1.5 million in membership interests as of February 2023; and (4) listing CEC Steel as his only asset. Given this evidence—which Mr. Farris did not dispute—it is impossible to believe that Mr. Farris has no idea what CEC Steel is worth. At most, he reported that CEC Steel is owed $764,000 and represented that its value would increase if that debt was paid.[7] Mr. Farris was not forthcoming about liabilities either. In fact, he did not report any. Yet, the Probation Officer was able to locate two civil judgments against CEC Steel totaling $100,520, and he also found multiple UCC filings against Mr. Farris and CEC Steel.

Mr. Farris also provided limited—and likely incomplete—information about his personal finances. During his bail investigation, he reported having $2,600 in a savings account, but by May 2024, he did not report any bank accounts whatsoever. And despite referencing his ailing health in multiple filings with the Court and during sentencing, Mr.

---

[7] At least under an accrual accounting system, those accounts receivable would factor into CEC Steel's value unless someone has determined that they are not likely to be recovered.

Farris did not disclose any corresponding medical expenses. Instead, he reported that his only expense is groceries, at $800 per month. His Monthly Cash Flow Statement identifies a monthly allowance of $4,031 from CEC Steel for housing, auto, and travel, but it is not clear whether these are the same funds that CEC Steel uses to pay Mr. Farris's rent and car-related expenses. The Probation Officer treated these funds as separate, concluding in the PSR that along with his income from Social Security, Mr. Farris has "a positive monthly cash flow of $6,240.00." (PSR at ¶ 87.) Mr. Farris did not object to this conclusion or argue that the PSR was inaccurate in this regard.

    Following sentencing, Mr. Farris provided additional documentation to Probation, but those documents raise more questions than they answer.[8] And none of the additional information casts doubt on my initial belief that he can pay for an attorney. Even if Mr. Farris's 2021 and 2022 tax returns reveal that CEC Steel was not profitable (which is not clear to me), it does not matter because CEC Steel continued—and continues—to pay for Mr. Farris's housing and car-related expenses, which likely contributed to its profitability. In addition, the Profit and Loss statements for Construction Rigging and Steel Erectors, LLC does not tell me anything. The Probation Officer did not mention this company in the PSR, and Mr. Farris did not explain its significance during sentencing or in his supplemental brief. Absent additional information about what this company is and Mr.

---

[8] I'm not sure why Mr. Farris submitted this information to Probation rather than as part of his filing with the Court.

Farris's relationship to it, the P&L statements shed no light on whether Mr. Farris can afford an attorney. To the extent there are gaps in Mr. Farris's financial disclosures, the fault lies with Mr. Farris, who is responsible for "providing the court with sufficient and accurate information upon which the court can make an eligibility determination." CJA Guidelines, Vol. 7, Part A, § 210.40.20(f). And he "should not benefit from his incomplete, undervalued or untruthful financial disclosures." *Konrad*, 730 F.3d at 351-52.

In short, Mr. Farris has not met his burden to show that he is financially eligible under the CJA. As I said during sentencing, I cannot conclude that someone with a net monthly income of $6,240 is unable to pay for an attorney. That is true even if Mr. Farris's net income is closer to $2,200 a month (which he hasn't demonstrated). And, as the sole owner and officer of CEC Steel, Mr. Farris appears to have sufficient control over the company's funds, such that they are available to him, which would explain why the company pays for his living expenses. *See Konrad*, 730 F.3d at 349 ("Assets are available when a defendant has control over or discretionary use of them."). Indeed, he included CEC's profits and losses on his individual income tax returns, characterizing CEC Steel as a sole proprietorship rather than a separate business entity. Mr. Farris claims that the company has 112 employees, and he has not provided any evidence that it is in danger of ceasing operations as a going concern. On the contrary, he reported that CEC Steel is owed $764,000 in accounts receivable and listed the company as an asset. Given all this,

Mr. Farris has failed to meet his burden to demonstrate that he is unable to pay for the cost of representation.

Notably, Mr. Farris has never argued—either at sentencing or in his supplemental brief—that repayment would cause him a financial hardship. At most, he argues that he does not "draw a substantial salary or … otherwise have a significant, sustained positive cashflow." (ECF No. 69 at ¶ 9.) That might be true. But Mr. Farris is not eligible for representation under the CJA merely because the funds available to him are not "substantial" or "significant." While I sympathize with his declining health, that fact does not prevent him from paying for the legal services he received in this case.

### B.  Applicable Rate

The CJA authorizes me to direct Mr. Farris to reimburse the cost of his legal services, but it is silent on the exact amount he must repay. However, the Third Circuit has held that "reimbursement" refers to the money that a defendant "would have paid to a private attorney had he accurately completed the financial disclosure affidavit" and that the CJA rate does not reflect that cost because it is "universally recognized as a below-market rate for criminal defense lawyers." *Konrad*, 730 F.3d at 351. However, "[t]he fee schedule established by Community Legal Services, Inc. … 'has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia.'"

*Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). Thus, I will apply the applicable CLS rate.[9]

Different attorneys from the Federal Defenders Office have represented Mr. Farris over the course of this case. At a minimum, they each have had at least six to ten years' worth of legal experience. Thus, I will apply the CLS rate of $415 per hour, which represents the high end of the market rate for attorneys with six to ten years of experience. That figure is appropriate, "[p]articularly in this district," where the Federal Defenders Office "employ[s] highly skilled lawyers" who provide a "high level of legal representation" to their clients. *United States v. Konrad*, No. 11-cr-15, 2011 WL 6739464, at *6 (E.D. Pa. Dec. 21, 2011), *aff'd*, 730 F.3d 343 (3d Cir. 2013). Certainly, that has been my consistent experience with the lawyers from that office.

Mr. Farris's Counsel, as sworn officers of the Court, have represented in their briefing that their office has spent 336 hours working on his case, through sentencing. Thus, I will require Mr. Farris to pay $139,440 as reimbursement for those services. He shall remit those funds "to the court for deposit in the Treasury" for "repayment to the institution that expended funds" for Mr. Farris's representation. 18 U.S.C. § 3006A(f); *Konrad*, 730 F.3d at 351.

---

[9] The CLS fee schedule is available at https://clsphila.org/about-community-legal-services/attorney-fees/.

IV.   **CONCLUSION**

Mr. Farris has not met his burden to show that he will suffer a financial hardship if I order him to pay for the legal services he received in this case. Therefore, I will direct him to pay $139,440 to the Court as reimbursement for those services. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 8, 2025